UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

HOLLIS CARE GROUP, INC., MEDI SYSTEM RENAL
CARE MANAGEMENT LLC, JACQUES ANTOINE, M.D.,
GARAUDY ANTOINE, M.D., M.B.A.,

                              Plaintiffs,

-against-

UNITED STATES OF AMERICA, THE SMALL BUSINESS
BUSINESS ADMINISTRATION AND LINDA MCMAHON,
Solely as the Administrator of THE SMALL BUSINESS
ADMINISTRATON,

                              Defendants.

------------------------------------------------------------x

**AMENDED COMPLAINT**

Docket No. 19 CV 5695 (JMF)

      Plaintiffs, the HOLLIS CARE GROUP, INC., MEDI-SYSTEMS RENAL CARE MANAGEMENT LLC, JACQUES ANTOINE, M. D. and GARAUDY ANTOINE, M.D., MBA by their attorney, REGINA FELTON allege as and for their Complaint as follows:

## I. INTRODUCTION

      1.      This is a civil action brought by the Hollis Care Group, Inc. and Medi-System Renal Care Management LLC, Jacques Antoine, M.D. and Garaudy Antoine, M.D., MBA.

      2.      Medi-System Renal Care Management Services LLC applied for a construction loan from Community National Bank, now merged with Bridgehampton National Bank, to build an urgent care renal facility in Hollis Queens, New York.

3. The doctors, seven in all, were told that they did not qualify for the loan, but thereafter, the first vice president called Garaudy Antoine, M.D., M.B.A. and advised that the bank would fund the loan if the bank selected the general contractor.

4. The doctors consented.

5. The bank selected a general contractor who was a long-standing customer of the bank, having no experience in the construction of renal care facilities, unbeknownst to plaintiffs.

6. The bank arranged the meeting between Dr. Antoine and the general contractor. The general contractor advised that the general contracting company required a one-third interest in Hollis Care Group, Inc. in addition to the standard contracting fees under the AIA Agreement as the loan was contingent upon their hire.

7. The doctors reluctantly conceded believing that the general contractor would expedite the completion of the Project if it had a financial interest in its completion. This was not the case.

8. The Loan closed on July 13, 2012 and was to be completed in 145 days..

9. The general contractor failed to provide skilled workers at the site. The Project fell behind schedule.

10. The doctors sought and received a commitment to refinance from another lender. Thirteen months later, the doctors terminated the general contractor and informed the bank of its decision to terminate their banking relationship.

11. The bank defaulted the lenders. This was a non-monetary default.

## JURISDICTION

12. The basis of the jurisdiction for the United States District Court is the SMALL BUSINESS ACT, 15 U.S.C. 634 §5(b)(1) which states

> (b) In performance of, and with respect to, the functions, powers and duties, vested in him by this Act the Administrator may --
>
> (1) sue and be sued in any court of record having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be entered against the Administrator or his property;

13. The United States Small Business Administration (hereinafter "SBA") promulgates assistance programs authorized under sections 7(i) and 7(j) of the Small Business Act to assist in the establishment, preservation and strengthening of small business concerns located in urban areas, especially those with high proportions of unemployed or low income individuals. [15 U.S.C. §631]

14. The Small Business Act proclaims that Congress recognizes that certain groups in the United States own and control little productive capital

specifically because of limited opportunities for small business ownership. [15 U.S.C. §631]

15. SBA offered and offers loans to small businesses in furtherance of its objective to fund loans to businesses in urban area communities.

16. One such loan was/is offered under the title Preferred Lender Program.

17. Through the Preferred Lender Program, SBA qualified agents participate in the Program by originating loans to small businesses and signing Loan Authorizations as "a Preferred Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this authorization." [See Exhibit A – Authorization]

18. Exhibit A is an authorization executed on February 21, 2012 to Hollis Care Group, LLC. Plaintiff herein is Hollis Care Group, Inc.

19. The Loan Number assigned to plaintiff is identical to the Loan Number assigned to Hollis Care Group, LLC, 50856850-0.

20. The location of Hollis Care Group, LLC, a fictitious business, is identical to the location of the space leased by plaintiff.

21. The Preferred Lender Participation initial application, also dated "2/21/2012," shows the applicant as Hollis Dialysis LLC. Upon information and belief, this entity also is fictitious. [See Exhibit B]

22. This initial application is for a renal dialysis facility showing the purpose of the loan as leasehold and working capital.

23. Hollis Dialysis LLC is not plaintiff.

24. In or about May 2014, Plaintiffs notified the Preferred Lender that Plaintiffs had a commitment to refinance the Loan through another Lender.

25. On or about May 20, 2014, under loan number 50856850-0 the Preferred Lender defaulted plaintiff Hollis Care Group, Inc. on the Note and the remaining defendants on their guarantees with the exception Garaudy Antoine, M.D., MBA.

26. SBA honored the 7(a) Loan Guaranty. [See Exhibit C]

27. On September 8, 2014, Plaintiffs notified SBA of the anomalous documentation supporting the Loan, namely;

    a. The March 21, 2012 commitment conditioned the loan Upon the hiring of a general contractor selected by the Preferred Lender requiring an executed contract (Item 12 under Conditions);

    b. Assignment of the plans and permits for construction(Item 13 under Conditions);

    c. The Preferred Lender waived all evidence of a Performance Bond, a Materials Bond, Builders'
    d. Risk and Worker's Compensation;

    e. The general contractor requested and received a 1/3 interest in Plaintiff Hollis Care Group, Inc. [See Exhibit D]

28. This was a non-monetary default.

29. Plaintiff reported the default to a "SBA Specialist" at the New York District Office.

30. SBA did not respond.

31. Such broad power to originate, authorize and default loans lent itself to abuses.

32. Loans originating under the Preferred Lender Program have SBA financial backing through the SBA 7(a) Loan Guaranty.

33. The SBA 7(a) Loan Guaranty reimburses the SBA agent/lender when the SBA agent/lender declares a borrower in default.

34. Plaintiffs sought funding for the construction of an ambulatory urgent care renal dialysis facility and the purchase of equipment.

35. The ambulatory urgent care renal dialysis facility was to be located in an urban area known as Hollis, New York.

36. Hollis, New York had limited opportunities for small business ownership and was in dire need of an ambulatory urgent care renal dialysis services.

37. When plaintiffs put SBA on notice of the scheme employed through the manipulation of the Preferred Lender Participation Program and that Plaintiffs were harmed, SBA ignored its obligation and duty to investigate.

38. Under 15 U.S.C. §634(5)(b)(11) SBA has the power to investigate:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this Act the Administrator may make such investigations as he deems necessary to determine whether a recipient of or participant in any assistance under this Act or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or of any rule or regulation under this Act, or of any order issued under this Act. The Administration shall permit any person to file with it a statement in writing, under oath or otherwise as the Administration shall determine, as to all the facts and circumstances concerning the matter to be investigated. For the purpose of any investigation, the Administration is empowered to administer oaths and affirmations, subpena [sic] witnesses, compel their attendance, take evidence, and require the production of any books, papers, and documents which are relevant to the inquiry. Such attendance of witnesses and the production of any such records may be required from any place in the United States. In case of contumacy by, or refusal to obey a subpena [sic] issued to, any person, including a recipient or participant, the Administration may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, and documents; and such court may issue an order requiring such person to appear before the Administration, there to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey such order of the court may be punished by such court as contempt thereof. All

process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found;

39. SBA suspected aberrant conduct in connection with the Loan to the extent that SBA's Office of Inspector General investigated over a two-year period from "early 2015 to late 2016." [See Exhibit E -- January 31, 2019]

40. SBA informed the participating lender, "SBA was denying liability on its guaranty of the loan..." [See Exhibit E -- January 31, 2019]

41. SBA retroactively denied liability under the 7(a) Loan Guaranty statute and requested the return of the guaranty funds. [See Exhibit E -- January 31, 2019]

42. Plaintiffs had filed two written complaints with the Office of Inspector General. Both were ignored.

43. As early as September 2014 and as late as 2018, plaintiffs informed SBA of the abuses perpetuated under the of the 7(a) Loan Guaranty.

44. The U. S. Small Business Administration, National Guaranty Purchase Center, Herndon Corporate Center, 1145 Herndon Parkway, Herndon, Virginia, the repository for SBA Loan documents, advised plaintiffs that there are no SBA Loans in the name of the plaintiffs.

45. There is a Loan bearing the identical Loan Number assigned to Plaintiffs, 5085685008. Plaintiffs are not entitled to the contents of this Loan file,

as Plaintiffs are not "Hollis Care Group, LLC." Many of the documents contained in the Loan file were withheld based on restrictions applied under the FOIA, as Plaintiffs are not the borrowers. [See Exhibit F]

46. SBA failed to fulfill its mandate under the Small Business Act, 15 U.S.C. §634 and should be held accountable.

47. Through the unbridled abuse of the Preferred Lender Participation Program and the 7(a) Guaranty Program, Plaintiffs were the unwitting victims of the unsupervised exploitation of the program.

48. SBA failed to exercise due diligence in supervision in the management and control of the agent and the Lender as agent for SBA to the detriment of plaintiffs and to the Hollis Community.

49. By reason of the conduct described herein, the Defendants and others, knowingly and intentionally devised a scheme and artifice to deceive plaintiffs and divest of money, property, goodwill, good credit report standing, diminished credit ratings stemming therefrom, loss of stature in the professional and business communities.

WHEREFORE plaintiffs the HOLLIS CARE GROUP, INC., MEDI-SYSTEMS RENAL CARE MANAGEMENT LLC, JACQUES ANTOINE, M. D. and GARAUDY ANTOINE, M.D., MBA, respectfully request a Judgment in their favor:

      a. Lost investment:

      b. Lost income;

      c. Projected future income;

      d. Fees and costs incurred in defending any action brought and reasonable attorney's fees; and

      e. Such other and further relief as to this Court is just and proper.

Dated: Brooklyn, New York
       August 29, 2019

                          FELTON & ASSOCIATES

                          By: Regina Felton, Esq.
                              P.O. Box and Address
                              1371 Fulton Street
                              Second Floor
                              Brooklyn, New York   11216
                              Tel.: (718) 622-1100